UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**JAMES CARL DORON WILLIAMS,**

      Petitioner,

v.                                    **Case No: 6:17-cv-1912-Orl-31GJK**
                                          (6:15-cr-227-Orl-31GJK)

**UNITED STATES OF AMERICA,**

      Respondent.
_____/

## ORDER

THIS CAUSE is before the Court on James Carl Doron Williams' Motion to Vacate, Set Aside, or Correct Sentence (Doc. 1), filed pursuant to 28 U.S.C. § 2255, and Memorandum thereto. (Doc. 2.) Respondent filed a Response to the Motion to Vacate (Doc. 5) in compliance with this Court's instruction. Petitioner filed a Reply to the Response. (Doc. 7.) Pursuant to an Order by the Court, Respondent filed a Supplemental Response (Doc. 17) and Petitioner filed a Supplemental Reply (Doc. 19).

Petitioner asserts five grounds for relief. For the following reasons, the Motion to Vacate will be denied.

### I.    PROCEDURAL HISTORY

Petitioner was indicted for conspiracy to possess with intent to distribute one kilogram or more of heroin and five kilograms or more of cocaine, in violation of 21 U.S.C. § 846 (Count One), and attempted possession with intent to distribute of one kilogram or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count Two).

(Criminal Case 6:15-cr-227-Orl-31GJK, Doc. 8.)[1] Pursuant to a plea agreement, Petitioner pleaded guilty to Count Two and the Government agreed to dismiss Count One. (Criminal Case, Docs. 35, 36.) Following a sentencing hearing, the Court sentenced Petitioner to eighty-two (82) months of imprisonment. (Criminal Case, Doc. 59.)

Petitioner filed a notice of appeal, and his counsel filed an *Anders*[2] brief. The Eleventh Circuit affirmed Petitioner's conviction and sentence. (Criminal Case, Docs. 61, 79); *United States v. Williams*, 686 F. App'x 630 (11th Cir. 2017) (per curiam) (unpublished). Petitioner sought a writ of certiorari in the United States Supreme Court, which was denied. (Criminal Case, Doc. 82.)

## II. LEGAL STANDARD

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense. *Id.* at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of

---

[1] Criminal Case 6:15-cr-227-Orl-31GJK will referred be to as "Criminal Case."

[2] *Anders v. California*, 386 U.S. 738, 744 (1967).

counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

### III. ANALYSIS[3]

#### A. Claims One, Two, & Part of Three

In Claim One, Petitioner alleges that, during the sentencing phase, trial counsel did not "subject the prosecutor's case . . . [to] meaningful adversarial testing," because he failed to impeach DEA Agent Tyler Keen with the contents of his Report of Investigation,

---

[3] Following review of Respondent's initial Response, the Court entered an Order concluding that Petitioner's claims were not barred by the appeal waiver in his plea agreement. (Doc. 14).

DEA Form-6. (Doc. 1 at 4, Doc. 2 at 14–15.)  Petitioner also claims counsel should have objected to the prosecution's knowing introduction of false and material testimony. (Doc. 1 at 4, Doc. 2 at 15.)

Specifically, Petitioner challenges Keen's sentencing hearing testimony that, during a meeting between coconspirators in Chicago, the confidential informant ("CI") saw "one of the coconspirators . . . with approximately over 100 grand on him, and that this person wanted multiple kilos with that money."[4] (Doc. 2 at 15; Criminal Case, Doc. 53 at 58–59.)  Petitioner argues that the statement should have been objected to as hearsay. He further notes that Keen's Report of Investigation following the Chicago meetings indicated that the CI "did not have any information referencing financial related information." (Doc. 2 at 16, 18; Ex. 2 at 4.)  Petitioner claims that the allegedly "false, misleading, and highly prejudicial" information elicited from Keen by the prosecution "lead this Honorable [C]ourt to conclude that [he] had the 'wherewithall' to undertake the alleged transaction." (Doc. 2 at 17, 19.)  Petitioner also alleges, in Claim Three, that counsel agreed to file a motion attacking Keen's testimony, but did not do so. (Doc. 2 at 21.)

Petitioner's second claim also stems from the first.  In Claim Two, Petitioner contends that, as a result of the alleged prosecutorial misconduct — the introduction of

---

[4] Keen also testified that the CI indicated Petitioner was present at the Chicago meeting in question, but that, to Keen's knowledge, Petitioner never possessed the alleged $100,000 and the money was never brought to any of the deals. (Criminal Case, Doc. 53 at 59–60).

false testimony in violation of *Giglio v. United States*, 405 U.S. 150, 153 (1972)[5] — his sentence was unfair and resulted in the denial of his Fourteenth Amendment due process rights. (Doc. 1 at 5; Doc. 2 at 17–18.)

" 'In order to prevail on a *Giglio* claim, a petitioner must establish [(1)] that the prosecutor knowingly used perjured testimony[] or failed to correct what he subsequently learned was false testimony, and [(2)] that the falsehood was material.' " *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 949 (11th Cir. 2016) (emphasis added) (quoting *Ventura v. Att'y Gen., Fla.*, 419 F.3d 1269, 1277 (11th Cir. 2005)). However, as Respondent argues, Keen's Report and his testimony were not necessarily contradictory. The fact that the Report did not contain the CI's observation about one of the coconspirators having $100,000 does not prove Keen's testimony — that the CI made such an observation — was false. Therefore, Petitioner has not established a *Giglio* violation, and counsel did not err by choosing not to impeach Keen with his Report or by failing to object to Keen's testimony on grounds of prosecutorial misconduct.

Moreover, even if the statement was hearsay, which the Court does not decide,[6] and even if counsel erred by failing to impeach Keen and to object to or otherwise challenge his testimony, Petitioner cannot demonstrate prejudice from counsel's alleged

---

[5] In *Giglio*, 405 U.S. at 153, the Supreme Court held that the government's failure to correct false and material testimony required the defendant be given a new trial.

[6] *See Strickland*, 466 U.S. 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

errors. The Court has other evidence upon which to base its decision, and the record demonstrates that the Court did not rely solely on the availability of $100,000 to one of the coconspirators at the meeting in determining Petitioner's ability to obtain the quantity of heroin charged.

Although trial counsel argued that Petitioner arrived for the sale with only $17,000 of the required purchase price, the prosecution argued that it is a common practice for an individual to give a down payment and finish paying the full purchase price once the drugs have been sold. The prosecution also noted Petitioner had previously been convicted of the sale of a kilogram or more of heroin. (Criminal Case, Doc. 72 at 3–11.) Indeed, the Court did not mention the alleged $100,000 in explaining its decision:

> Well, from a factual standpoint, my take on this is that Mr. Williams was essentially a broker here. I don't think there's any contention that he personally had the wherewithal to raise the kind of money that we're talking about. But nevertheless he is responsible for the amount that he could reasonably raise. And there is a lot of history here. And I have no reason not to take Mr. Williams at his word basically that he was capable of raising this money from people in the Chicago area and that he could have followed through with that commitment.
> I also -- there was also testimony, and I've had considerable prior experience in this business where drugs are purchased on consignment with a down payment, in essence, and then the balance of the proceeds of the sale are paid after the sale and the profit is made at the next level.
> And in addition, as Mr. Searle points out, consistent with the case law, Mr. Williams indicated that after this transaction was consummated he would be back for more.
> So I think the government has established by a preponderance of evidence that Mr. Williams was reasonably capable of raising the money to purchase the full kilo[.]

(Criminal Case, Doc. 72 at 11–12.)

Accordingly, because he has not demonstrated he was prejudiced by Keen's testimony, Petitioner has not demonstrated counsel was ineffective as alleged in Claims One and Three. Nor has Petitioner demonstrated that his sentence, as based on the Court's determination that he was reasonably capable of raising money to purchase the full kilo, was unfair or violated his constitutional rights as alleged in Claim Two. Claims One, Two, and the relevant portion of Three are denied.

### B. Claim Three

In the remainder of Claim Three, Petitioner contends that his trial counsel erred by failing to move for downward departure under United States Sentencing Guidelines § 2D1.1, Application Notes 5 and 27(A). (Doc. 1 at 6; Doc. 2 at 20.) He claims the evidence indicated that DEA agents actively pursued him as a suspect and attempted to induce him to purchase more heroin than he was reasonably capable of purchasing. (Doc. 2 at 20–21.) Petitioner alleges that counsel discussed with him the application of Notes 5 and 27(A) to Section 2D1.1 and agreed to move for downward departure based on those notes, yet failed to do so. (Doc. 2 at 21.) Ultimately, Petitioner claims that, had counsel moved for downward departure on the bases alleged, he would have received a four-level downward departure, resulting in a Guidelines range of fifty-one (51) to sixty-three (63) months.

However, Petitioner's argument does not entitle him to relief. Application Note 5 to Section 2D1.1 provides, in pertinent part:

> In an offense involving an agreement to sell a controlled substance, the agreed-upon quantity of the controlled substance shall be used to determine the offense level unless

> the sale is completed and the amount delivered more accurately reflects the scale of the offense. . . . If, however, the defendant establishes that the defendant did not intend to provide or purchase, *or was not reasonably capable of providing or purchasing*, the agreed-upon quantity of the controlled substance, the court shall exclude from the offense level determination the amount of controlled substance that the defendant establishes that the defendant did not intend to provide or purchase or was not reasonably capable of providing or purchasing.

U.S.S.G. § 2D1.1, app. n.5 (emphasis added).

Although not styled as a motion for downward departure, counsel included argument based on Application Note 5 in the Sentencing Memorandum filed with the Court. (Criminal Case, Doc. 48 at 1–5.) Counsel also argued at the sentencing hearing that Petitioner was not reasonably capable of purchasing the agreed upon quantity of heroin. (Criminal Case, Doc. 72 at 3–6.) Accordingly, Plaintiff has not demonstrated that counsel erred as to Application Note 5, and therefore, has not demonstrated ineffective assistance of counsel in that regard.

Application note 27(A), which pertains to a possible entrapment or sentencing manipulation defense, provides:

> **(A) Downward Departure Based on Drug Quantity in Certain Reverse Sting Operations.** — If, in a reverse sting (an operation in which a government agent sells or negotiates to sell a controlled substance to a defendant), the court finds that the government agent set a price for the controlled substance that was substantially below the market value of the controlled substance, thereby leading to the defendant's purchase of a significantly greater quantity of the controlled substance than his available resources would have allowed him to purchase except for the artificially low price set by the government agent, a downward departure may be warranted.

U.S.S.G. § 2D1.1, app. n.27(A).

As with Application Note 5, counsel included argument based on Application Note 27(A) in the Sentencing Memorandum. (Criminal Case, Doc. 48 at 1–5.) Nevertheless, counsel did not present argument related to Note 27(A) at the sentencing hearing, and counsel stated as to any possible entrapment defense that, "Judge, the facts are as the testimony indicated. I have not made any further argument on that point." (Criminal Case, Doc. 72 at 7.) Even so, Petitioner cannot demonstrate prejudice from any alleged error in that regard, as he has not shown a reasonable probability that the result of the sentencing proceedings would have been different. *See Strickland*, 466 U.S. at 694.

Application Note 27(A) requires the Court find: (1) "the government agent set a price for the controlled substance that was substantially below the market value of the controlled substance," and (2) Petitioner did not have the ability to make the purchase. *See* U.S.S.G. § 2D1.1, app. n.27(A). Petitioner does not argue in the present Motion that the agreed-upon price was set artificially low. Instead, he argues in his Reply that the undercover agent "[]agreed[] to an overly generous extension of credit (nearly 70%) to induce [Petitioner] to buy the drugs in question." (Doc. 19 at 8.) However, Petitioner is not permitted to raise new arguments in the Reply. *See United States v. Krasnow*, 484 F. App'x 427, 429 (11th Cir. 2012) (per curiam) (citing *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008); *United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003)) ("A party abandons all issues on appeal that he or she does not "plainly

and prominently" raise in his or her initial brief. . . . Parties cannot raise new issues in reply briefs.").

Even had Petitioner properly raised the argument in the Motion, it would not entitle him to relief. Counsel argued in the Sentencing Memorandum, in conjunction with discussion of Application Note 27(A), that the government agent reduced the price of the heroin by forty percent. (Criminal Case, Doc. 48 at 4.) Testimony was then presented at the sentencing hearing that consignment drug deals happened often in large-scale drug transactions. (Criminal Case, Doc. 53 at 30.) Notwithstanding counsel's argument in the Sentencing Memorandum, the Court ultimately ruled that no sentencing manipulation occurred. (Criminal Case, Doc. 72 at 7–8.) Thus, as to the first element, the Court considered and specifically rejected it.

Petitioner has, additionally, failed to satisfy the second element required for application of Note 27(A) — that he did not have the financial resources available to make the purchase. The Court explicitly found to the contrary at the sentencing hearing, relying on the testimony regarding consignment for drug purchases, the Court's experience in similar cases, Petitioner's history of being able to afford such purchases, and Petitioner's own affirmations to the government agent (to which he admits) that he could, indeed, broker the deal. (Criminal Case, Doc. 53 at 10–12, 42–44; Doc. 72 at 11–12.)

As Petitioner has not demonstrated that he would have satisfied the requirements of Application Note 27(A), he has not demonstrated prejudice required by *Strickland*, and, therefore, has not demonstrated ineffective assistance of counsel. Claim Three is denied.

### C. Claim Four

In Claim Four, Petitioner faults counsel for filing an *Anders* brief that presumed the appeal waiver contained in Petitioner's plea agreement was enforceable. (Doc. 1 at 8; Doc. 2 at 22–25.) Specifically, Petitioner challenges the way counsel handled the first issue raised in Petitioner's appellate brief — whether Petitioner knowingly and voluntarily gave up his right to appeal. (Doc. 2 at 23; Doc. 5–4 at 6, 9, 10–11.) He claims that counsel should not have stated that Petitioner's waiver was knowing and voluntary without first ascertaining whether the Government would enforce the waiver. (Doc. 2 at 22–25.) Petitioner asserts that, had counsel done so, and had counsel not asserted the Government's position to Petitioner's detriment, counsel "would have concluded that there were 'non[-]frivolous' issues to be raised on appeal. By raising 'non[-]frivolous' issues, there is a reasonable probability the appellate court would have considered Petitioner's [direct] appeal." (Doc. 2 at 25.)

In support of his position, Petitioner relies on *United States v. Davis*, 530 F.3d 318, 321 (5th Cir. 2008). In that case, the Fifth Circuit declined to permit appellate counsel to withdraw upon the filing of an *Anders* brief until counsel certified the Government's position regarding enforcement of the defendant's appeal waiver in the plea agreement. *See id.* (quoting *United States v. Acquaye*, 452 F.3d 380, 382 (5th Cir. 2006)).

However, decisions of the Fifth Circuit Court of Appeals are not binding on this Court, and the Court finds no similar requirement in this circuit. In *Anders v. California*, 386 U.S. 738, 744 (1967), the Supreme Court set forth the following procedure for court-

appointed counsel to pursue an appeal requested by his client when counsel has determined there is no merit to the appeal:

> [I]f counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court — not counsel — then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.

Here, counsel satisfied the procedure set forth by the Supreme Court in *Anders*, and, accordingly, the Court finds his performance in that regard was not deficient.

Further, even if counsel erred, Petitioner cannot demonstrate prejudice. The Eleventh Circuit determined that "independent review of the entire record reveals that counsel's assessment of the relative merit of the appeal is correct. Because independent examination of the entire record reveals no arguable issues of merit, counsel's motion to withdraw is **GRANTED**, and Williams's conviction and sentence are **AFFIRMED**." *United States v. Williams*, 686 F. App'x 630, 630–31 (11th Cir. 2017) (per curiam) (unpublished).

Although Petitioner claims counsel would have found non-frivolous issues to raise on appeal, given that the Eleventh Circuit affirmed Petitioner's conviction on appeal

following a *de novo* review of the record from which it identified no meritorious issues for appeal, this Court finds that defense counsel's alleged error did not cause Plaintiff prejudice. This claim is, therefore, denied.

D. **Claim Five**

In Claim Five, Petitioner alleges that trial counsel erred by failing to file a notice of appeal as requested by Petitioner. (Doc. 1 at 10; Doc. 2 at 25.) Petitioner claims counsel's failure to do so constitutes ineffective assistance of counsel *per se*. (Doc. 2 at 25.)

In support, Petitioner cites *Roe v. Flores-Ortega*, 528 U.S. 470 (2000). However, that case does not support his argument. In *Flores-Ortega*, the Supreme Court held that *Strickland*'s two-part test "applies to claims . . . that counsel was constitutionally ineffective for failing to file a notice of appeal." *Flores-Ortega*, 528 U.S. at 477. The Supreme Court explained that, "[i]f counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id.* at 478. However, even if counsel's performance was deficient, Petitioner must still demonstrate that he was prejudiced by counsel's error. *Strickland*, 466 U.S. at 687-88; *Flores-Ortega*, 528 U.S. at 484. The Supreme Court explained that the "serious denial of the entire judicial proceeding itself [(i.e., the appeal)], which a defendant wanted at the time and to which he had a right, . . . demands a presumption of prejudice." *Flores-Ortega*, 528 U.S. at 483. However, the Supreme Court specifically rejected a rule requiring courts to find prejudice *per se*, because a "*per*

*se* prejudice rule ignores the critical requirement that counsel's deficient performance *must actually cause the forfeiture of the defendant's appeal.*" *Id.* at 484 (emphasis added).

In the instant case, Petitioner concedes that he personally filed a notice of appeal, following which counsel filed a notice of appeal and *Anders* brief. (Doc. 2 at 26.) Even if counsel erred, which the Court does not decide, *see Strickland*, 466 U.S. 697, Petitioner cannot demonstrate prejudice because his appeal was not forfeited; instead, the appeal ultimately proceeded, resulting in the Eleventh Circuit's affirmance of his conviction and sentence. Accordingly, this claim is denied.

To the extent Claim Five may also be read to allege a claim of erroneous legal advice, such a claim does not entitle Petitioner to relief. Petitioner alleges that he "made it clear to [counsel] that he . . . would accept the plea [agreement] so long as all of his appellate rights were retained. [Counsel] assured [Petitioner] that those rights were preserved in the plea agreement. They were not." (Doc. 2 at 26.)

However, at the change of plea hearing, the Court reviewed the plea agreement with Petitioner:

> THE COURT: Okay. I just want to make sure that we're all operating off of the same document that was filed at docket entry 35. It appears that we are.
>
> So then, Mr. Williams, let me just ask you, are those your initials that appear in the lower left-hand corner on each and every page of the written plea agreement as well as the factual basis attached thereto?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And the personalization of elements, I guess, at page 16. Correct?

THE DEFENDANT: Correct.

THE COURT: And is that an indication that you did read each of those documents before you signed the plea agreement?

THE DEFENDANT: Yes.

THE COURT: Is it your signature that appears by your name on page 15 of the written plea agreement?

THE DEFENDANT: Yes.

THE COURT: Were you able to discuss the terms of the written plea agreement with your counsel before you signed it?

THE DEFENDANT: Yes, I did.

THE COURT: All right. And you did discuss the terms of the personalization of elements as well as the factual basis. Correct?

THE DEFENDANT: Yes.

THE COURT: You did that before you signed the plea agreement. Correct?

THE DEFENDANT: Yes.

THE COURT: Was your counsel able to answer any questions you may have had to your satisfaction?

THE DEFENDANT: Yes, he has.

THE COURT: At this point in time do you believe you understand the entire plea agreement?

THE DEFENDANT: Yes, I do.

THE COURT: Do you have any questions for me at this point in time about the terms of the plea agreement?

> THE DEFENDANT: No.
>
> THE COURT: All right. I'd like to review certain provisions with you, just to ensure that you do understand them.
>
> . . .
>
> THE COURT: Sir, under your written plea agreement, you are giving up your right to appeal your sentence once it's been imposed in all but four narrow circumstances, and I'd like to review that with you. This is set forth in your plea agreement at pages 11 and 12, specifically under subparagraph (b)(7).
>
> These are the four situations in which you would still have the right to appeal your sentence. The first is if the Court, after selecting a guideline range in conjunction with your sentencing, then exceeds that in imposing a sentence. The second is if the Court were to impose a sentence that in some way or manner exceeds the maximum penalties that we've reviewed earlier in this hearing. The third is if you did challenge your sentence on the basis that it violates your Eighth Amendment Constitutional guarantee against cruel and unusual punishment. The last situation is if the Government were to elect to appeal your sentence, you would then automatically have the right to cross-appeal your sentence.
>
> In all but those four narrow circumstances that I just reviewed, you are giving up your right to appeal your sentence once it's been imposed. Do you understand?
>
> THE DEFENDANT: Yes.

(Criminal Case, Doc. 71 at 7–9, 16–17.)

"Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Such representations are presumptively trustworthy and considered conclusive absent compelling evidence to the contrary.

*See United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false."). The Court's colloquy put Petitioner on notice, even if counsel did not, that, by entering into the plea agreement, Petitioner was giving up his right to appeal in all but the identified four circumstances. Petitioner affirmed, under oath, that he understood. He has not presented compelling evidence that his representation in that regard was false. Therefore, this claim is denied.

As neither issue presented in Claim Five is meritorious, Claim Five is denied.

### IV. CONCLUSION

Therefore, it is **ORDERED** and **ADJUDGED** as follows:

1. Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (Doc. 1) is **DENIED**, and this case is **DISMISSED** with prejudice.

2. The Clerk of Court shall enter judgment accordingly and is directed to close this case.

3. The Clerk of Court is directed to file a copy of this Order in Criminal Case No. 6:15-cr-227-31GJK and to terminate the Motion (Criminal Case, Doc. 83) pending in that case.

4. This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner has failed to make a

substantial showing of the denial of a constitutional right.[7] Accordingly, a Certificate of Appealability is **DENIED** in this case.

**DONE** and **ORDERED** in Orlando, Florida on May 6, 2019.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party
OrlP-4 5/6

---

[7] "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." *Rules Governing Section 2255 Proceedings for the United States District Courts*, Rule 11(a).